# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>         Plaintiff,<br><br>v.<br><br>RONALD A. DOBEK,<br><br>         Defendant. | Case No. 12-CR-253-JPS<br><br>ORDER |

    This criminal prosecution represents yet another episode of what occurs when errant Assistant U.S. Attorneys embark too late and without all their bags on a troubled adventure in case preparation, their lack of such preparation perhaps overshadowed only by the apparent absence of meaningful accountability, oversight, and supervision within the United States Attorney's office. For in the end, these ingredients collectively prove to be part of a quintessential recipe for disaster. But first, some relevant background facts.

    To begin, the origins of this case stretch all the way back to July of 2012 when the Government filed a sealed complaint against the defendant, Ronald Dobek, in a separate case in the Southern District of New York. (S.D.N.Y. Case No. 12-CR-583, Docket #1). That complaint charged Mr. Dobek with passport fraud and aggravated identity theft. (*Id.*) In that case, Mr. Dobek sought and received several extensions of time, all excludable under the Speedy Trial Act, to file pretrial motions. (*See, e.g.*, S.D.N.Y. Case No. 12-CR-583, Docket #7, #8).

    Eventually, in those proceedings, it became clear that Mr. Dobek was likely to face separate charges here, in the Eastern District of Wisconsin. (S.D.N.Y. Case No. 12-CR-583, Docket #9, at 2:10–2:18). Initially, the parties

in the New York case were very hopeful that they could reach a global disposition that would resolve the charges then pending against Mr. Dobek, together with the as-yet-unfiled charges that would have been brought against him in this district. (S.D.N.Y. Case No. 12-CR-583, Docket #9, at 2:21–3:1). The parties received another Speedy Trial extension at that juncture, in order to allow them to engage in plea negotiations to reach the anticipated global agreement. (S.D.N.Y. Case No. 12-CR-583, Docket #9, at 3:19–4:9).

Unfortunately, the global disposition envisioned never reached fruition. Thus, on December 11, 2012, the United States Attorney for the Eastern District of Wisconsin sought an indictment against Mr. Dobek from the grand jury. (Docket #1). The grand jury returned that indictment, charging Mr. Dobek with two substantive counts of illegally exporting defense articles to Venezuela. (Docket #1). On December 20, 2012, the parties in the Southern District case informed the presiding judge that a global agreement could not be reached, and Mr. Dobek would plead guilty to the Southern District charges before proceeding to trial on the separate charges pending against him here. (S.D.N.Y. Case No. 12-CR-583, Docket #12, at 2:19–2:24). The presiding judge in the Southern District case granted an additional extension consistent with the Speedy Trial Act to allow the parties to engage in further plea negotiations regarding the Southern District charges. (S.D.N.Y. Case No. 12-CR-583, Docket #12, at 3:18–3:25).

The parties received several more extensions of time in the Southern District case (S.D.N.Y. Case No. 12-CR-583, Docket #14, #15, #16), before Mr. Dobek finally pled guilty to a superseding three-count information charging

him with passport fraud, identity theft, and fraud with identification documents. (S.D.N.Y. Case No. 12-CR-583, Docket #17, #19).

Thereafter, Mr. Dobek awaited sentencing in the Southern District, which was adjourned once. (S.D.N.Y. Case No. 12-CR-583, Docket #21). Eventually, on June 14, 2013, Mr. Dobek was sentenced to a term of four months imprisonment on counts one and three (the passport and identification documentation fraud charges) and twenty-four months imprisonment on count two (the identity theft charge), to run concurrent for a total term of twenty-four months imprisonment.

In the meantime, the U.S. Attorney in this district took no action while Mr. Dobek was awaiting sentencing. In fact, the U.S. Attorney took practically no action until almost a month after Mr. Dobek's case was concluded in the Southern District. Then, it was not until August 16, 2013, that Mr. Dobek finally appeared for an arraignment on the charges pending against him in this district. (Docket #9).

But, even after Mr. Dobek's arraignment, the delays continued. The U.S. Attorney did not provide the defense with discovery until August 23, 2013, more than a week after the arraignment. (Docket #13). That required Mr. Dobek to seek an extension of time to file pretrial motions, which would otherwise have been due only a week later. (Docket #13).

All of this begs the question: if the U.S. Attorney's office in this district was not adequately prepared to follow through with making discovery available at the time of the arraignment, *even after having over eight months to prepare*, then why did they even present the charge to the grand jury so much earlier? The answer, of course, lies in the fact that the statute of limitations

would have otherwise expired on the conduct charged against Mr. Dobek in Count One of the underlying indictment.

That fact, in itself, also begs the question of why the U.S. Attorney did not bring the charges against Mr. Dobek in a more timely fashion so as to avoid any issues with the statute of limitations. As early as July of 2010, the Government was interviewing witnesses and gathering evidence against Mr. Dobek. (Docket #21, at 4–5). So why wait until the eleventh hour, fifty-ninth minute to bring the charges? Alas, there is no evidence in the record that would provide even a clue as to the basis for that decision. To be sure, that is an executive branch decision, and the Court respects that fact; nonetheless, at the risk of stating the obvious, it is a decision that served to send the U.S. Attorney's office further up the creek that they now find themselves struggling to navigate.

Whatever the reasons for the U.S. Attorney's lack of preparation at the time of Mr. Dobek's arraignment, it seemed that the kinks had mostly worked themselves out by early October–or so it would appear. There was very limited communication between the parties and the Court after the assigned magistrate judge granted Mr. Dobek's motion for an extension on September 3, 2013. Through communications with counsel, though, the Court ultimately became aware that Mr. Dobek was likely to decline to resolve his case short of a full blown trial.

In keeping with that plan, the parties filed their joint final pretrial report on October 10, 2013. (Docket #21). It was at that time that the chinks in the Government's case again began jumping off the page.

The first indication that there were serious issues with the state of preparations in the prosecution's case became apparent as the Court began

preparation of a preliminary draft of the instructions that would be given to the jury at the conclusion of the trial. In doing so, the Court noticed that—curiously and seemingly erroneously—the U.S. Attorney had included proposed jury instructions for a conspiracy charge. (Docket #21, Ex. 2, at 16). This was surprising, given that the indictment only charged Mr. Dobek with two substantive counts, both of which alleged illegal export. (Docket #1). It certainly did not include a conspiracy charge. (Docket #1). At the same time, Mr. Dobek's proposed jury instructions did not include any instructions addressing a conspiracy charge. (Docket #21, Ex. 3). Nonetheless, seeing as there were other clerical errors in the U.S. Attorney's pretrial report, including the erroneous representation that the jury instructions were submitted "by JAMES L. SANTELLE, United States Attorney for the *Northern District of Illinois*," (Docket #21, Ex. 2, at 1 (emphasis added)), the Court believed that the submission of jury instructions for uncharged conduct might well have also been erroneous.

Alas, it was not. The following day, in a phone conversation, Assistant U.S. Attorney Erica O'Neil informed the Court that, in fact, the Government planned to re-indict Mr. Dobek on Tuesday, October 15, 2013—the day of the final pretrial conference and less than a week before trial was scheduled to commence—to add a conspiracy charge. This was the first that the Court had caught wind of any anticipated additional charge.

Likewise, the U.S. Attorney's office informed Edward J. Hunt, Mr. Dobek's counsel, of this possibility very late in the pretrial process. In fact, Mr. Hunt informed the Court that he received word of this only moments before the parties submitted their joint pretrial report to the Court. To be

sure, this was a very unwise strategy on the part of the U.S. Attorney for two important reasons.

First, it is specific evidence of the fact that the U.S. Attorney's office did not abide by the Court's trial scheduling order. The trial scheduling order requires that "the government and the defendant confer in person, and thereafter prepare and file a single joint final pretrial report, the principal burden for the preparation and filing of which rests with counsel for the government." (Docket #8, at 1–2). Seeing as Mr. Dobek's jury instruction submission did not include instructions on a conspiracy charge, the Court concludes that the U.S. Attorney either: (a) never had the required open discussions with Mr. Dobek's attorney prior to preparing and submitting the pretrial report; or (b) had such a conversation but concealed the potential for re-indictment from defense counsel only to change its submission prior to submitting it to the Court. Whichever of those activities the U.S. Attorney engaged in, it is most troubling. Moreover, the fact that the parties did not adequately engage in pretrial discussions is further evidenced by their widely divergent submissions on the instructions regarding the elements of the illegal export charges, which give every appearance of having made virtually no attempt to reconcile. (Docket #21, Ex. 2, at 20; Docket #21, Ex. 3, at 8–9).

Second, and much more importantly, such conduct implicates Mr. Dobek's rights as an accused. The Assistant U.S. Attorney was, of course, free to exercise her prosecutorial discretion and re-indict Mr. Dobek if she had reason to do so. But to do so on the eve of trial, after ten months of virtual inaction, without providing any notice to Mr. Dobek, much less the Court, rings as nothing short of an attempt to ambush the defense. For in the end,

Mr. Dobek's right to a fair and speedy cannot be taken lightly, and such an ambush creates distinct difficulty for the Court in ensuring that the trial is *both* fair and speedy. For if the Court were to have forged ahead with the trial in a timely fashion, Mr. Dobek's defense may well have been prejudiced by its lack of preparation on the new charge; on the other hand, if the Court were to have granted the motion to adjourn, Mr. Dobek would have faced yet another delay in the already-lengthy lead-up to trial.

Moreover, the Court suspects that the proposed re-indictment may have been little more than a delay tactic by the Government. Immediately upon learning of the U.S. Attorney's re-indictment plan, the Court contacted Mr. Dobek's counsel to insure that he was aware that his client may face an additional charge. At that time, and again over the weekend, Mr. Dobek's counsel informed the Court that he was, indeed, aware of the U.S. Attorney's plan; that he had been made aware of that plan only shortly before submitting the parties' joint pretrial report; and that—even with the potential for an additional charge—Mr. Dobek wanted to forge ahead with trial. Shortly after Mr. Dobek's counsel informed the Court that his client was remaining steadfast in asserting his right to a speedy trial, the U.S. Attorney once again changed course and filed a motion seeking an adjournment of the trial.

Included in that motion was a representation from the U.S. Attorney that, due to the recent government shutdown, an essential trial witness would not be available to testify. (Docket #22, at ¶¶ 4–8). Again, this was the first that the Court had heard any representation from the U.S. Attorney's office that they may not have been able to proceed to trial. As with many other aspects of this case, this fact demonstrates the U.S. Attorney's lack of

diligence in prosecuting this action. At the very least, the U.S. Attorney could have informed the Court at the time the shutdown took effect that its case would be negatively affected if its witnesses were deemed not essential and therefore prevented from appearing. Instead, the U.S. Attorney chose to wait to impart that information until the eve of trial. Indeed, the U.S. Attorney's office represented that they did not discover the unavailability of the witness until October 10, 2013. (Docket #22, at ¶ 5). Why wait until less than a week before trial—particularly when the shutdown was already in effect—to establish the availability of the necessary witness? For any reasonably diligent attorney, establishing the availability of a witness who is *essential to prove an element of that attorney's case* (*see* Docket #27, at 3:1–3:10) would be a top priority in being adequately prepared for trial, particularly when there is concrete knowledge that the witness' availability may be in question.

As the Court pointed out during its pretrial conference with the parties, this discussion does not even so much as acknowledge the fact that the possibility of a government shutdown was well-known for quite some time. (Docket #27, at 6:19–6:24). This case was noticed for trial on August 14, 2013 (Docket #8), and at that time it was already clear that the Government could face a shutdown. *E.g.*, Jennifer Steinhauer, *Senator Amplifies Her Voice to Referee Fiscal Showdown*, N.Y. TIMES, August 5, 2013, http://www.nytimes.com/2013/08/06/us/politics/senator-amplifies-her-voice-to-referee-fiscal-showdown.html. Again, any reasonably diligent attorney with knowledge that one of its essential witnesses may face difficulty in appearing for trial would make every effort up front to ensure that witness' availability or at least to inform the Court of the potential that the witness may be unavailable. Indeed, given the consistently-repeated

abject failure of Washington's politicians to meaningfully engage with one another to reach solutions on the nation's difficulties over the past several years,[1] perhaps the U.S. Attorney should have *planned* that a shutdown would occur and operated under the justifiable assumption that its witness would not be available come time for trial. But, no, instead the U.S. Attorney's office said nothing to the Court and sat on its hands until the eve of trial before confirming the availability of one of its key witnesses.

Given the U.S. Attorney's office's multiple miscues in bringing this case to trial, the Court found itself in the unenviable position of having to deny their request for an adjournment. And seeing as that denial left the U.S. Attorney "inextricably wound around the axle" of its own case, which should otherwise have proceeded to trial as expected, the Court dismissed the matter, leaving the parties to brief the issue of whether that dismissal should be with or without prejudice. (Docket #27, at 6:14, 6:25–7:5). The parties filed briefs on that issue (Docket #26, #28, #29), and the Court now turns to a discussion of the nature of its dismissal.

The Court begins by pointing out that the parties seem to proceed under the mistaken belief that the dismissal occurred under the Speedy Trial Act, 18 U.S.C. §§ 3161–3174. (*See, e.g.*, Docket # 26, at 3; Docket #29, at 2–3). While the Court believes that a dismissal on that basis may very well have been appropriate, given: (1) the Court's authority to *sua sponte* dismiss a case under the Speedy Trial Act, *see, e.g.*, *United States v. Mitchell*, 374 Fed. App'x 859, 861 (11th Cir. 2010); *United States v. Stangeland*, No. 08-CR-4043, 2008 WL 2953731 (N.D. Iowa July 29, 2008), *report and recommendation adopted at* 2008

---

[1] The Court acknowledges that as a result of subsequent legislation the government has been reopened.

WL 4559715 (N.D. Iowa Oct. 10, 2008); *United States v. Arias-Gonzales*, No. 06-CR-4088, 2007 WL 2122377 (N.D. Iowa, July 20, 2007); *United States v. Gomez-Olmeda*, 296 F. Supp. 2d 71, 77 (D.P.R. 2003); *United States v. Lowery*, 21 F. Supp. 2d 648, 649 (E.D. Tex. 1998); *United States v. Draine*, No. 97-40030-01, 1997 WL 457519 (D. Kan. July 25, 1997); and (2) the apparently impending violation of the Speedy Trial Act due to the government's failures (*see* Docket #27, at 4:16–4:18 (requesting extension to November 18, 2013, or November 25, 2013); Docket #30 (noting that Speedy Trial Act deadline is November 8, 2013)), ultimately the Court did not elect to proceed on that basis.

Rather, the Court's dismissal comes under Rule 48(b) of the Federal Rules of Criminal Procedure. That Rule provides that "[t]he Court may dismiss an indictment, information, or complaint if unnecessary delay occurs in: …bringing a defendant to trial." FED. R. CR. PR. 48(b). Rule 48 is distinct from both the Speedy Trial Act and the Sixth Amendment's speedy trial requirements. *See, e.g., United States v. Ward*, 211 F.3d 356, 361–62 (7th Cir. 2000); 3B CHARLES ALAN WRIGHT & ARTHUR P. MILLER, FEDERAL PRACTICE AND PROCEDURE § 804 (4th ed. 2013) (hereinafter, "3B WRIGHT"). It is "a codification of the inherent power of a court to dismiss a case for want of prosecution," and does not require a separate violation of either the Sixth Amendment or the Speedy Trial Act to apply. *See, e.g., United States v. DeLeon*, 710 F.2d 1218, 1223 (7th Cir. 1983) (quoting 1944 Note of Advisory Committee following FED. R. CR. PR. 48(b)); *United States v. Clay*, 481 F.2d 133, 135 (7th Cir. 1973) ("It is, of course, well settled that a Rule 48 dismissal may rest on a non-constitutional ground, such as "want of prosecution"); Advisory Committee Note from 2002 Amendments to FED. R. CR. PR. 48(b); 3B WRIGHT § 804. The term "want of prosecution," which is discussed in Rule

48(b)'s Advisory Committee Notes, applies to situations—precisely like the one at hand—in which the government causes unnecessary delay by appearing for trial unprepared. *United States v. Goodson*, 204 F.3d 508, 513 (4th Cir. 2000) (cited by Advisory Committe Notes from 2002 Amendments to FED. R. CR. PR. 48(b)) (*Goodson*, itself, citing 1944 Note of Advisory Committee following FED. R. CR. PR. 48(b)); *United States v. Hattrup*, 763 F.2d 376 (9th Cir. 1985); *United States v. Correia*, 531 F.2d 1095, 1099 (1st Cir. 1976)). Under Rule 48(b) and the Court's related supervisory power to administer its own docket and preserve the integrity of the judicial process by formulating its own procedural rules, the court has "broad discretion to manage its docket and impose a wide range of sanctions against parties who violate [its] scheduling orders." *Goodson*, 204 F.3d at 514 (citing *United States v. Hasting*, 461 U.S. 499, 505 (1983); *United States v. Lee*, 906 F.2d 117, 119 (4th Cir. 1990)).

The Court exercised that substantial discretion in dismissing the U.S. Attorney's indictment against Mr. Dobek. The U.S. Attorney, of course, violated the Court's scheduling order, which had been in place for nearly two months, by appearing for trial unprepared; that violation, in itself, warrants dismissal. *E.g. Goodson*, 204 F.3d at 514 (citing *Hasting*, 461 U.S. at 505). But, the Court also points out that, employing the *Barker v. Wingo* four-factor balancing test to the situation at hand,[2] it finds that dismissal is particularly appropriate. That test examines "the length of the delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant."

---

[2]As WRIGHT & MILLER makes clear, courts "employ the same process of balancing the four factors in *Barker v. Wingo* used to pass on a [Sixth Amendment] speedy trial claim" "[i]n determining whether there has been unnecessary delay" under Rule 48(b). 3B WRIGHT § 804

3B WRIGHT § 804 (citing *Barker v. Wingo*, 407 U.S. 514, 530 (1972). In fact, each of those factors weighs in favor of dismissal.

The first, length of delay, weighs in favor of dismissal. The Seventh Circuit has never nailed down a precise amount of time that is presumptively prejudicial, but it is clear that delays approaching one year are problematic, and the Seventh Circuit has reviewed cases with shorter delays than the one at hand, including a case with a delay of only eight months. *See, e.g., Doggett v. United States*, 505 U.S. 647, 652 n. 1 (1992); *United States v. Harmon*, 721 F.3d 877, 882–85 (7th Cir. 2013) (citing *United States v. Hassebrock*, 663 F.3d 906, 915 (7th Cir. 2011) for the contention that the Seventh Circuit has "not set a clear cutoff")); *United States v. Hills*, 618 F.3d 619, 629 (7th Cir. 2010); *United States v. Loera*, 565 F.3d 406, 412 (7th Cir. 2009), *cert. denied*, 558 U.S. 1035 (2009); *United States v. Arceo*, 535 F.3d 679, 683–86 (7th Cir. 2008) (citing *United States v. Oriedo*, 498 F.3d 593, 597 (7th Cir. 2007)); *United States v. Carrol*, 228 Fed. App'x 605, 607 (7th Cir. 2007) (finding an eleven-month delay to be prejudicial); *United States v. White*, 443 F.3d 582, 589 (7th Cir. 2006); and *compare United States ex rel. Fitzgerald v. Jordan*, 747 F.2d 1120, 1127 (7th Cir. 1984) (finding eight month delay presumptively prejudicial) *with Hogan v. McBride*, 74 F.3d 144, 145 (7th Cir. 1996) (finding an eight month delay not presumptively prejudicial). Here, given that the delay was of ten months, the Court is justified in finding that such delay approaches one year, and is therefore presumptively prejudicial.

The second factor, the reason for the delay, also weighs in favor of dismissal. Quite clearly, the Assistant U.S. Attorneys assigned to prosecute this case are entirely at fault for the delay. It was the U.S. Attorney's office's initial failure to swiftly bring charges against Mr. Dobek that resulted in a

last-minute indictment against him to avoid a statute of limitations issue. It was then the U.S. Attorney's failure to expeditiously return Mr. Dobek to this district so that his case could go forward in a timely manner that caused the indictment to be left dangling for ten months. It was the U.S. Attorney's failure to timely turn over discovery that necessitated Mr. Dobek's sole motion for an extension of time. And it was the U.S. Attorney's abject failure to either anticipate the issues with its case or timely communicate those issues to the Court and Mr. Dobek's counsel that ultimately prevented the trial from going forward as it should have, despite the fact that the U.S. Attorney's office had ten months to prepare for trial. And, while the Court will give the U.S. Attorney's office the benefit of the doubt and find that perhaps these failings were not purposeful or deliberate, the Court must nonetheless consider negligence on their behalf and weigh that negligence against them (even if that weight should be less heavy). *Ward*, 211 F.3d at 361. And given the hefty weight of the negligence by the U.S. Attorney in this case, the Court finds that this factor weighs heavily in favor of dismissal.

This now brings the Court to the third factor, which also weighs in favor of dismissal: Mr. Dobek's assertion of his speedy trial right. Though Mr. Dobek never filed a motion for a speedy trial, he also never attempted to delay. In fact, his sole motion for an adjournment was a result of the U.S. Attorney's inability to diligently supply him with the discovery in the case. (Again the Court notes that this is inexplicable, given the amount of time the U.S. Attorney had between indictment and arraignment in which it could have prepared that discovery for disclosure.) Most importantly, even when faced with the potential of an additional charge against him, Mr. Dobek

demanded that the trial go forward. Clearly, Mr. Dobek asserted his speedy trial rights, and the Court weighs this factor in favor of dismissal.

Finally, the Court examines the fourth factor, prejudice to the defendant, and finds that this also weighs in favor of dismissal. In this case, Mr. Dobek has suffered all three forms of prejudice that are of concern to the Court: (1) oppressive pretrial incarceration; (2) anxiety and concern; and (3) possibility of impaired defense. *White*, 443 F.3d at 591 (citing *United States v. Rothrock*, 20 F.3d 709, 711 (7th Cir. 1994)); *Smith v. Hooey,* 393 U.S. 374, 378, 89 S.Ct. 575, 21 L.Ed.2d 607 (1969) (quoting *United States v. Ewell,* 383 U.S. 116, 120, 86 S.Ct. 773, 15 L.Ed.2d 627 (1966)). As to the first of those types of prejudice, the Court readily acknowledges that Mr. Dobek is incarcerated on another charge, and therefore would be confined regardless of when this trial were to have gone forward. Nonetheless, the availability of resources to Mr. Dobek, such as programming that would be available to him in prison, is no longer available to him in his current location while awaiting trial. Granted, that prejudice may be somewhat minor, but the Court does not believe it to be irrelevant. Next, the Court notes that while the U.S. Attorney stalls the trial, Mr. Dobek must wait anxiously to see if he will be convicted of crimes that potentially carry more severe penalties than those for which he is currently incarcerated. Finally, and most importantly, the delay in trying this case has the strong possibility of impairing his defense. Mr. Dobek's counsel amply prepared for the case with the good faith expectation that it would go to trial on the date provided by the Court. (Docket #29, at 8). The Court commends him for that. The U.S. Attorney was not as diligent. Thus, Mr. Dobek's counsel—who is undoubtedly not working solely on this matter—would be required to put this extremely complex case on the

backburner to accommodate the U.S. Attorney's failures. Though the Court has every faith in defense counsel's abilities, there is the chance that he may lose some inertia after having prepared for trial once only to have the U.S. Attorney seek an adjournment. In all, the Court acknowledges that this prejudice factor, perhaps, weighs least heavily in favor of dismissal. It does, nonetheless, weigh in favor of dismissal.

Each factor weighing in favor of dismissal, the Court reiterates its finding that the Government's conduct requires that this case be dismissed under Rule 48(b).[3]

That brings the Court to the final portion of its analysis: whether the dismissal should be with prejudice or without prejudice. Because the Court has found an unnecessary delay that justifies dismissal under Rule 48(b), but has not found a constitutional violation, the Court has discretion to determine whether its dismissal should be with or without prejudice. *See, e.g.*, *Goodson*, 204 F.3d at 516 (reversing only that portion of the district court's analysis that held that dismissal under Rule 48(b) should be with prejudice); *Hattrup*, 763 F.2d at 378 (now-Justice Kennedy writing for the Ninth Circuit and discussing the fact that district judge's dismissal with prejudice under Rule 48(b) was in error); *United States v. Stoker*, 522 F.2d 576, 580 (10th Cir. 1975); *United States v. Furey*, 514 F.2d 1098, 1103 (2d Cir. 1975); *Mann v. United States*, 304 F.2d 394, 397–98 (D.C. Cir. 1962).

---

[3]The Court has also considered whether to dismiss this matter under the Sixth Amendment. Given that federal courts require a very high showing of prejudice to find a Sixth Amendment violation, *see, e.g.*, *Doggett v. United States*, 505 U.S. 647, 655; *Oriedo*, 498 F.3d at 597 (finding that a three-year delay was substantial but not enough, alone, to support a finding of a Sixth Amendment violation), which the Court does not believe is satisfied, here, the Court does not believe that a finding of a Sixth Amendment violation would be appropriate.

Unlike for dismissals under the Speedy Trial Act, which must be analyzed under that statute's framework for analyzing whether a dismissal should be with or without prejudice, *see* 18 U.S.C. § 3162(a)(2), there is no specific test for determining whether a Rule 48(b) dismissal should be with prejudice or without. Nonetheless, the case law appears to make clear that a Rule 48(b) dismissal is presumed to be without prejudice and should be with prejudice only if the Court has previously made clear that the Government faces dismissal with prejudice if they do not comply with a Court order or if the defendant makes a very strong showing of prejudice. *See, e.g.*, *Clay*, 481 F.2d at 135 ("Rule 48 dismissal may rest on a non-constitutional ground, such as 'want of prosecution,' and normally such a dismissal is without prejudice to a subsequent prosecution."); *Stoker*, 522 F.2d at 580 (where district court did not specifically note whether its dismissal was with prejudice, the government could re-file charges); *United States v. McLemore*, 447 F. Supp. 1229, 1239 (E.D. Mich. 1978) (noting the general assumption that a Rule 48(b) dismissal is without prejudice); *United States v. Loud Hawk*, 628 F.2d 1139, 1149–1151 (9th Cir. 1979) (dismissal with prejudice not appropriate absent warning to government), *overruled on other grounds by United States v. W.R. Grace*, 526 F.3d 499 (9th Cir. 2008); *United States v. Simmons*, 536 F.2d 827, 834 (9th Cir. 1976) (same); *Goodson*, 204 F.3d at 516 (finding that dismissal with prejudice was in error where the defendant faced only limited prejudice). Nonetheless, the three factors that play a role in deciding whether a Speedy Trial Act dismissal should be with prejudice or without—the seriousness of the offense, the facts and circumstances leading to dismissal, and the impact of re-prosecution on the administration of

justice, *see* 18 U.S.C. § 3162(a)(2)–provide a good framework within which to analyze this question.

Considering those factors, in conjunction with the fact that the case law generally favors dismissal without prejudice under Rule 48(b), the Court determines that the charges against Mr. Dobek should be dismissed without prejudice. First, there is no question that this is a serious offense. It involves the sale of regulated defense items to a foreign nation's military, which is certainly just as or more serious than other offenses that the Seventh Circuit has found to be serious. *United States v. Sykes*, 614 F.3d 303, 309 (7th Cir. 2010) (approving of the district judge's determination that bank robbery is a serious offense); *United States v. Killingsworth*, 507 F.3d 1087, 1090–91 (7th Cir. 2007) (noting the seriousness of firearms offenses even when they do not include injury or murder). To some extent, the fact that the Government waited so long to charge Mr. Dobek weighs in favor of finding that at least the Government did not view this charge as extremely serious. But, overall there can be little doubt that allegations of selling defense articles to a foreign country are serious. Whether the Government can prove the charges beyond a reasonable doubt remains for a jury to decide. If Mr. Dobek did, in fact, sell defense items to a foreign country, then it would be a serious miscarriage of justice to allow him to go free without any punishment for that crime. In all, this factor weighs heavily in favor of dismissal without prejudice.

The second factor, on the other hand, weighs in favor of dismissing with prejudice. The Court has amply voiced its dissatisfaction with the U.S. Attorney's handling of this case. To call it inept would, in the Court's view, vastly understate the seriousness of the problems that occurred. Indeed, other than a labyrinth of titles which appear in the U.S. Attorneys office's

organizational chart, the ever-critical matters of accountability, adequate oversight, and supervision appear conspicuous by their absence. Here, they are nowhere to be found in the prosecution history. Moreover, neither Mr. Dobek nor his counsel played any role in the delays leading up to the scheduled trial date. In fact, throughout the process, both Mr. Dobek and his counsel have remained steadfastly ready to present their case. As such, the Court must find that this second factor weighs in favor dismissal with prejudice.

The final factor weighing in favor of dismissal with prejudice is more neutral. Dismissal of this case with prejudice would have some positive effect on the administration of justice. This Court, alone, has seen repeated issues with the U.S. Attorney's office's failure to adequately prepare themselves for trial in recent years. *See, e.g.*, *United States v. Baez*, Case No. 10-CR-155; *United States v. Hirtzinger*, Case No. 05-CR-5. Those problems, as evidenced by this case as well as a spate of other instances in which various representatives of the U.S. Attorney's office have found themselves scrambling to comply with the Court's reasonable requirements, appear to have gone unabated. Thus, a dismissal with prejudice of such a serious charge would likely be valuable if, for no other reason, than to ensure that the U.S. Attorney gets the message: the administration of justice, particularly as it affects the liberty interest and rights of individual defendants is not to be taken lightly. This Court prides itself on its ability to protect the rights of the accused by ensuring that they are given a speedy trial. When the U.S. Attorney's actions–or perhaps better stated, *inaction*–stand in the way of that goal, the Court must take appropriate steps to insure that the rights of the defendant are adequately protected. However, with that note, the Court also acknowledges that

dismissal without prejudice "is not a toothless sanction." *United States v. Taylor*, 487 U.S. 326, 342 (1988). That is particularly true, here, where one of the charges against Mr. Dobek has essentially been dismissed with prejudice, because the U.S. Attorney will not have the ability to re-file it against him, as it now stands barred by the applicable statute of limitations. This is a very serious sanction, in and of itself. Additionally, the Court again notes that the case law favors dismissal without prejudice, particularly where there was no advance warning of dismissal with prejudice and the prejudice that the defendant would allegedly suffer is also somewhat limited. For these reasons, the Court finds that this factor is somewhat neutral, although the Court notes that the U.S. Attorney now has fair warning: if any future cases are left unattended like this one, with little deference to the requirements found in the Court's trial scheduling order, then the case will not only be dismissed, but will carry the added sanction that the dismissal will be with prejudice.

On balance, the Court finds that in this instance the dismissal should be without prejudice. Admittedly, this is a very close call, but given the serious nature of the offense and the general favor of dismissal without prejudice, the balance ultimately tips in favor of dismissal without prejudice. As the Court has continuously noted throughout this order, it finds many shortcomings in the U.S. Attorney's handling of this case. The serious issues in that office should not be weighted so heavily that it would deprive the American people of justice in a case involving an accused international arms trafficker. With the benefit of the foregoing analysis, the U.S. Attorney and his staff should now be well aware of the Court's concerns with the lack of accountability, oversight and supervision in handling of criminal cases and

matters in this district. Going forward, they must be extremely vigilant in ensuring that what has occurred in this and other cases does not continue.

For all of these reasons, the Court will dismiss this case, pursuant to Rule 48(b) and its supervisory powers, without prejudice.

Accordingly,

IT IS ORDERED that, pursuant to Rule 48(b) of the Federal Rules of Criminal Procedure together with the Court's supervisory powers, this case be and the same stands DISMISSED without prejudice.

Dated at Milwaukee, Wisconsin, this 21st day of October, 2013.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge